UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DARLEEN MILLER,

                              Plaintiff,

v.                                                        5:16-cv-0942
                                                        (TWD)

COMM'R OF SOC. SEC.,

                              Defendant.

_____

APPEARANCES:                                 OF COUNSEL:

OLINSKY LAW GROUP              HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State Street, Suite 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.       SERGEI ADEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION AND ORDER

     Plaintiff Darleen Miller brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her Title II application for Disability Insurance Benefits and a Title XVI application for Supplemental Security Income ("SSI"). This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. Pursuant

to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States Magistrate Judge.  For the reasons discussed below, the Commissioner's decision denying Plaintiff disability and SSI benefits is affirmed, and Plaintiff's complaint is dismissed.

## I.  RELEVANT BACKGROUND

### A.  Factual Overview

Plaintiff was born in 1964, making her 49 at the date she filed her application with the Social Security Administration ("SSA").  (T. 166, 172.[1])  Plaintiff has a 9th grade education and past relevant work as a certified nursing assistant ("CNA"), janitor, and plastics hand packager. (T. 48-53, 215-22.)  Plaintiff alleges disability consisting of arthritis, hypothyroidism, bursitis in the knee, anxiety, depression, joint pains, leg problems, and severe plaque psoriasis.  (T. 207.)

### B.  Procedural History

Plaintiff applied for disability benefits on April 22, 2013.  (T. 22.)  Additionally, Plaintiff applied for SSI on April 23, 2013.  *Id.*  Plaintiff's applications were initially denied on August 2, 2013, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). (T. 97, 102, 107-08.)  On September 5, 2014, ALJ Lisa B. Martin conducted a video hearing. (T. 43-73.)  Plaintiff appeared in Syracuse, New York, and the ALJ presided over the hearing from Falls Church, Virginia.  *Id.*  On February 20, 2015, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 22-38.)  On May 24, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1.)

---

[1]  The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

## C.     The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 24-36.) First, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 9, 2012, the alleged onset date. (T. 24.) Second, the ALJ found Plaintiff's plaque psoriasis with joint pain and stiffness, chronic ankle swelling, lumbar spine disorder, obesity, left upper extremity disorder, hypothyroidism, depression, and bipolar disorder are severe impairments. (T. 24-25.) However, the ALJ found Plaintiff's chronic obstructive pulmonary disease, borderline diabetes, rectal bleeding, and glaucoma are non-severe impairments. (T. 25.) Third, the ALJ found Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 26-28.) Specifically, the ALJ considered Listings 1.04 (spinal disorders), 1.02B (major dysfunction of a joint due to any cause), 8.05 (dermatitis), 9.00 (endocrine disorders), and 12.04 (affective disorders). *Id.* Fourth, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform:

> a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant needs a brief (1-2 minute) change of position opportunity as often as every 30-45 minutes, she must avoid all climbing of ladders, ropes, and scaffolds, and she is otherwise limited to occasional postural activities otherwise. She must avoid all overhead reaching tasks with the left upper extremity, can perform the full range of lifting and carrying at the light exertional level with the right upper extremity, must avoid all dangerous work hazards such as unprotected heights and exposed machinery, and must avoid all extreme heat, humidity, and cold conditions. Further, because of the claimant's pain and mental distractions that prevent detailed decision making, the claimant is limited to routine, simple tasks that do not require a fast assembly quota pace.

(T. 29.) Fifth, the ALJ found Plaintiff is unable to perform past relevant work as a CNA, janitor, or plastics hand packager. (T. 36.) Sixth, and finally, the ALJ determined there are jobs that

exist in significant numbers in the national economy that Plaintiff can perform, including price marker, routing clerk, and collator operator.  (T. 37.)

### D.      The Parties' Contentions

Generally, Plaintiff asserts two arguments in support of her motion for judgment on the pleadings.  (Dkt. No. 9.)  First, Plaintiff claims the ALJ's RFC assessment is not supported by substantial evidence.  *Id*. at 8-14.[2]  Specifically, Plaintiff contends her RFC is unsupported by substantial evidence because the record does not support the ALJ's determination regarding Plaintiff's ability to sit, stand, and walk.  *Id*.  Plaintiff further argues the ALJ failed to recontact examining physicians for clarification regarding their assessments of Plaintiff's physical and mental impairments.  *Id*.  Second, Plaintiff argues the ALJ's step five determination is not supported by substantial evidence because the hypothetical question posed to the vocational expert was incomplete and based upon Plaintiff's unsupported and erroneousness RFC.  *Id*. at 14.

Generally, Defendant asserts two arguments in support of her motion for judgment on the pleadings.  (Dkt. No. 10.)  First, Defendant contends substantial evidence supports the ALJ's finding that Plaintiff could perform a range of light work.  *Id*. at 5-14.  Second, Defendant argues Plaintiff's step five argument is merely another way to phrase Plaintiff's disagreement with the RFC finding.  *Id*. at 15.  Defendant maintains that because there is substantial evidence to support the ALJ's RFC finding, which corresponds to the hypothetical posed to the vocational expert, substantial evidence supports the ALJ's step five determination.

---

[2]  Page numbers in citations to the parties' briefs refer to the actual page numbers of the brief rather than the page number assigned by the Court's CM/EDF electronic filing system.

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see also Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153

(S.D.N.Y. 1992). In other words, this Court must afford the ALJ's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner], even if it

might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of

Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.       Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity. If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental ability
> to do basic work activities. If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed in
> Appendix 1 of the regulations. If the claimant has such an
> impairment, the [Commissioner] will consider him disabled without
> considering vocational factors such as age, education, and work
> experience; the [Commissioner] presumes that a claimant who is
> afflicted with a "listed" impairment is unable to perform substantial
> gainful activity. Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional capacity to
> perform his past work. Finally, if the claimant is unable to perform
> his past work, the [Commissioner] then determines whether there is
> other work which the claimant could perform. Under the cases
> previously discussed, the claimant bears the burden of the proof as
> to the first four steps, while the [Commissioner] must prove the final
> one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Whether the RFC is Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 10 at 5-14.) To those reasons, the Court adds the following analysis.

A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 42 (2d Cir. 1999) (internal quotation marks omitted)).

In assessing a claimant's RFC, the ALJ must consider "all of the relevant medical and other evidence." 20 C.R.R. §§ 404.1545(a)(3)-(4), 416.945(a)(3)-(4). It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion. 20 C.F.R. §§ 404.1546(c), 416.946(c). The RFC must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

As noted above, the ALJ determined that Plaintiff had the RFC to perform a full range of light work, with a few additional limitations. (T. 29.) Under 20 C.F.R. §§ 404.1567(b) and 416.967(b), light work is defined as:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b). Social Security Ruling 83-10 elaborates on the requirements of light work:

> Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. . . . Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.

SSR 83-10, 1983 WL 31251, at *6 (SSA 1983).

1.    Plaintiff's Physical RFC

Plaintiff argues the record does not support the ALJ's determination regarding Plaintiff's ability to stand and walk for up to 6 hours with only 1-2 minute breaks. (Dkt. No. 6 at 8-20.) Specifically, Plaintiff maintains the ALJ "relied upon her own lay opinion in determining Plaintiff can sit and stand for these interval of time, and rejected medical opinion evidence as ambiguous without attempting to obtain clarification." *Id.* at 9. This Court disagrees, and

concludes that the ALJ's RFC assessment of Plaintiff's physical impairments is supported by substantial evidence.

In making her RFC determination, the ALJ gave partial weight to the opinion of consultative examiner Elke Lorensen, M.D., who examined Plaintiff on September 29, 2014. (T. 32-33, 354-66.) Dr. Lorensen observed that Plaintiff appeared to be in no acute distress during the examination. (T. 354.) Plaintiff displayed a normal gait. (T. 355.) She did not require any assistive devices, did not need help changing for the examination or getting on and off the examination table, and could rise from a chair without difficulty. *Id.* She declined walking on her heels and toes, and her squat was to 40 percent. *Id.*

Upon examination, Plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally during the consultative examination. (T. 356.) Her lumbar spine showed some impairment, with flexion of 40 degrees, and extension and lateral flexion of 15 degrees bilaterally. *Id.* The straight leg raise test was negative bilaterally. *Id.* Plaintiff had full range of motion of elbows, forearms, and wrists bilaterally. *Id.* Her hip flexion was 60 degrees bilaterally and knee flexion was 75 degrees bilaterally. *Id.* Her joints were stable and nontender, and there was no redness, heat, swelling, or effusion. *Id.* Plaintiff's hand and finger dexterity were intact, and she showed 4/5 grip strength bilaterally. *Id.* Dr. Lorensen diagnosed Plaintiff with psoriasis, back pain, joint pain, and obesity. *Id.*

Based on the examination, Dr. Lorensen opined Plaintiff had no gross physical limitations for sitting, standing, walking, and handling small objects with her hands. (T. 356-57.) Dr. Lorensen indicated there are moderate to marked restrictions with bending, lifting, reaching, and squatting. (T. 357.) In the medical source statement, Dr. Lorensen indicated Plaintiff could sit for eight hours at a time without interruption, stand for two hours at a time without

interruption, and walk for two hours at a time without interruption.  (T. 359.)  In an eight hour day, Dr. Lorensen indicated Plaintiff could sit for a total of eight hours, stand for a total of four hours, and walk for a total of four hours.  *Id*.

The ALJ noted this contradiction and afforded the portion of Dr. Lorensen's opinion related to standing and walking little weight.  (T. 34.)  However, because Dr. Lorensen's objective findings that Plaintiff had some reduced range of motion in her back and joints supported Plaintiff's postural limitations and the limitation to light work, the ALJ afforded some weight to this portion of Dr. Lorensen's opinion.  *Id*.

There were no treating source opinions in the record, so the ALJ evaluated Dr. Lorensen's examination findings and medical opinion in the context of Plaintiff's treatment records and other consultative examinations.  (T. 29-36.)  On February 1, 2012, Plaintiff presented to Oswego Hospital with skin rashes covering almost her entire body.  (T. 275.)  Plaintiff denied muscle ache, joint ache, weakness, and fatigue.  *Id*.  On examination, she had full strength in her extremities, positive sensation, and no edema.  (T. 276.)  Plaintiff was diagnosed with plaque psoriasis with a secondary diagnosis of tobacco abuse and obesity.  (T. 269.)  On her first hospital day, Plaintiff had significant improvement of her scaling, erythema, and itchiness.  *Id*.  Plaintiff was discharged on February 3, 2012, and prescribed mometasone fuorate 0.1% cream, Desenex, Atarax, folic acid, and Aquaphor ointment.  (T. 269-70.[3])

---

[3]  Mometasone furoate is a synthetic corticosteroid used to relieve the itching and inflammation of numerous skin conditions.  Mometasone, NATIONAL INSTITUTE OF HEALTH, U.S. NATIONAL LIBRARY OF MEDICINE, https://medlineplus.gov/druginfo/meds/a687014.html (last visited Sept. 25, 2017).  Desenex (miconazole ), an antifungal agent used to treat skin infections.  Miconazole, NATIONAL INSTITUTE OF HEALTH, U.S. NATIONAL LIBRARY OF MEDICINE, https://medlineplus.gov/druginfo/meds/a601203.html (last visited Sept. 25, 2017).  Atarax (hydroxyzine) is used to relieve itching cause by allergic skin reactions.  Hydroxyzine, NATIONAL INSTITUTE OF HEALTH, U.S. NATIONAL LIBRARY OF

On June 1, 2012, Plaintiff presented to Oswego Behavioral Services for mental health treatment with Rebecca Delong, LMSW. (T. 346.) Plaintiff reported her psoriasis is "very uncomfortable" and she had problems with insurance not covering some of her treatments. (T. 347.) Plaintiff was referred for a medication appointment. *Id.* On June 8, 2012, Plaintiff treated with Vilas Patil, M.D., at Oswego Behavioral Services. (T. 291.) As to her physical conditions, Plaintiff stated she had not had any medical care for psoriasis since February 2012, which had recently "flared up." (T. 291.) Plaintiff stated she itches her skin lesions and has trouble sleeping. *Id.* Plaintiff was given a prescription for mometasone fuorate 0.1% cream, Desenex powder, and Vistaril. (T. 292.[4]) Plaintiff was also prescribed Celexa and Ambien. *Id.*[5] During her July 6, 2012, follow-up appointment with Dr. Patil, Plaintiff reported that she had been sleeping well and denied current feelings of depression. (T. 290.) However, Plaintiff remained very frustrated with her skin condition and lack of access to medical care. *Id.* She was continued on Celexa and Ambien and was to be seen again in two months. *Id.* There are no further treatment records with Dr. Patil and/or Oswego Behavioral Services.

---

MEDICINE, https://medlineplus.gov/druginfo/meds/a682866.html (last visited September 25, 2017).

[4] Vistaril (hydroxyzine) is an antihistamine used to relieve itching caused by allegoric skin reaction and also to relieve anxiety and tension. Hydroxyzine, NATIONAL INSTITUTE OF HEALTH, U.S. NATIONAL LIBRARY OF MEDICINE, https://medlineplus.gov/druginfo/meds/a682866.html (last visited Sept. 25, 2017).

[5] Celexa (citalopram hydrobromide) is an orally administered selective serotonin reuptake inhibitor used to treat depression. Citalopram, NATIONAL INSTITUTE OF HEALTH, U.S. NATIONAL LIBRARY OF MEDICINE, https://medlineplus.gov/druginfo/meds/a699001.html (last visited Sept. 25, 2017). Ambien (zolpidem) is an orally administrative sedative-hypnotics used to treat insomnia. Zolpidem, NATIONAL INSTITUTE OF HEALTH, U.S. NATIONAL LIBRARY OF MEDICINE, https://medlineplus.gov/druginfo/meds/a693025.html (last visited Sept. 25, 2017).

On June 20, 2013, Plaintiff presented for a consultative examination with Don Henderson, M.D. (T. 298.) During the examination, Plaintiff complained of bilateral leg swelling, psoriasis, possible arthropathy, and hypothyroidism. *Id.* She complained of chronic stable dyspnea on exertion, joint pain in her knees, and rashes. (T. 299.) Dr. Henderson described Plaintiff as cooperative, with average intelligence and no trouble with mood or affect. (T. 301.) On examination, Plaintiff had a supple neck, no joint abnormalities on palpitation, no synovial effusions and limited range of motion. (T. 300-01.) In her extremities, Plaintiff had bilateral ankle edema, no clubbing, and no cyanosis. (T. 300.) Plaintiff had rashes over her elbows and knees, covering three to five percent of her body. *Id.* Dr. Henderson indicated Plaintiff had psoriasis on her thighs and elbows, which was not severe or infected, but was inflamed. (T. 301.) He further noted that Plaintiff suffers from insomnia and depression and was on a diuretic for ankle swelling. *Id.*

In July 2013, Stage agency medical consultant Mark Bohn, M.D., assessed that Plaintiff's physical impairments would not significantly impact her ability to perform basic work activities and, therefore, no RFC was needed. (T. 86-87.) Dr. Bohn noted that Plaintiff's activities of daily living included light household chores and driving, and that she does not use a cane or brace. (T. 86.) The ALJ gave partial weight to Dr. Bohn's opinions. (T. 32.)

The ALJ also supported her conclusion that Plaintiff could perform light work by assessing Plaintiff's activities of daily living. (T. 32.) On a daily basis Plaintiff does the dishes, tries to vacuum if her back is not bothering her, and watches television. (T. 61-62.) Plaintiff reported no issues with driving and taking a taxi. (T. 64, 304.) Plaintiff borrowed her friend's truck to drive to the hearing in Syracuse, which took approximately 30 to 45 minutes. (T. 63-64.) Plaintiff also testified she cannot sit for longer than half an hour, and she cannot stand for

longer than five to ten minutes because her feet and legs swell. (T. 61.) Plaintiff stated she changes positions throughout the day, alternating from walking, sitting, and reclining. (T. 61-62, 224.) Plaintiff also reported being able to dress and bathe, make her own microwavable meals, do laundry two times per week for two hours, dust for one hour a week, and go to the grocery store once a month for one to two hours. (T. 224-25.) The ALJ found Plaintiff's testimony with regard to activities of daily living to be inconsistent with the severe restrictions she alleged. (T. 30.)

In short, after carefully examining the entire record, the ALJ reasonably found that Plaintiff's impairment would not preclude a range of light work. (T. 29.) The ALJ observed that Plaintiff's treatment for various physical conditions had been sparse and sporadic, and her conditions improved with treatment. (T. 31-32.) *See also Navan v. Astrue*, 303 F. App'x 18, 20 (2d Cir. 2008) (claims of total disability were undermined by the plaintiff's failure to seek regular treatment for his allegedly disabling condition); *Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989) (holding that while a failure to seek medical attention does not "necessarily" preclude a finding of disability, it "seriously undermines" a disability claim). In addition, the ALJ noted Plaintiff had a poor work history generally, suggesting that a lack of ongoing work activity stemmed from factors other than totally disabling medically determinable impairments. (T. 33, 65.) *See also Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (holding that an ALJ can properly consider that a claimant's poor work history weighs against allegations of disabling symptoms).

It is the ALJ's role as fact-finder to weigh all the evidence and come to a conclusion; the fact that she does not rely on any one opinion when doing so is not error unless her findings are unsupported by substantial evidence. 20 C.F.R. §§ 404.1545, 416.945 (indicating that it is the

duty of the ALJ, not a medical source, to formulate a claimant's RFC); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.") (citation omitted); *Marrese v. Colvin*, No. 15-CV-6369 (JWF), 2016 WL 5081481, at *3 (W.D.N.Y. Sept. 16, 2016) ("The ALJ may, in reconciling conflicting evidence, reject portions of a medical opinion and accept other portions of that same opinion."); *Veino v. Barhart*, 312 F. 3d 578, 588-89 (2d Cir. 2002) (stating that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve" and finding that "it was within the province of the ALJ" in resolving the evidence to accept parts of a doctor's opinion and reject others). Further, "it is not *per se* error for an ALJ to make the RFC determination absent a medical opinion . . . [and] remand is not necessary where 'the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.'" *Lewis v. Colvin*, No. 13-CV-1072S, 2014 WL 6609637, at *6 (W.D.N.Y. Nov. 20, 2014) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)).

Here, because the ALJ adequately explained her rationale for concluding that Plaintiff could perform light work, this Court concludes that the ALJ's physical RFC determination is supported by substantial evidence.

Faced with a lack of medical evidence to support greater limitations than already incorporated in the RFC, Plaintiff attempts to characterize the lack of evidence to her favor by arguing "the ALJ failed to follow the regulations by failing to contact Dr. Lorensen for clarification, as his true opinion is not apparent on its face, and there is no other function capacity assessment in the file sufficient to support an RFC assessment. Therefore, the record

was deficient and the ALJ's duty to develop the record and recontact a physician for clarification was triggered." (Dkt. No. 9 at 11.)

As an initial matter, it is the claimant's burden to establish her RFC. *See Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits."); *Eusepi v. Colvin*, 595 F. App'x 7, 8 (2d Cir. 2014) (same). Moreover, a lack of evidentiary support for a disability claim is not equivalent to conflict, ambiguity, or incompleteness that precludes an ALJ from issuing a decision without seeking further evidence on an issue where the claimant has the burden. *See Reynolds v. Colvin*, 570 F. App'x 45, 47 (2d Cir. 2014); *see also Lewis v Colvin*, 2014 WL 6609637, at *6. The current regulations afford wide discretion to an adjudicator on this point, but even under the previous regulations for recontacting medical sources, the Second Circuit had consistently held that an ALJ is not required to seek further evidence where the ALJ had the claimant's complete medical history and adequate evidence to reach a decision supported by substantial evidence. *See Eusepi*, 595 F. App'x at 9; *see also Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information . . . .") (citing *Perez*, 77 F.3d at 48). Additionally, even where a duty to recontact a physician would otherwise exist, "[t]he ALJ's duty to develop the record does not extend to re-contacting non-treating sources." *Tracy v. Colvin*, No. 5:15-cv-1085 (LEK), 2016 WL 3527876, at *8 (N.D.N.Y. June 23, 2016).

Lastly, to the extent Plaintiff contends that Dr. Lorensen's opinion was ambiguous and could be interpreted to suggested greater limitations and, therefore, argues the ALJ "cherry

picked" the lesser limitations (*see* Dkt. No. 9 at 11), the Court agrees with the Commissioner that Dr. Lorensen's overall opinion supports the finding that Plaintiff could perform light work. (Dkt. No. 10 at 12.) As set forth above, "[t]he full range of light work requires intermittently standing or walking for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time." *Poupor v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009). In the medical source statement, Dr. Lorensen indicated that Plaintiff could stand for four hours total in an eight hour work day *and* walk for four hours in an eight hour day. (T. 359.) Dr. Lorensen also indicated Plaintiff could sit for eight hours total in an eight hour day. *Id.* As such, contrary to Plaintiff's claims, Dr. Lorensen's "more restrictive" opinion regarding Plaintiff's physical limitations provides substantial evidence that Plaintiff could perform light work. Furthermore, Plaintiff has not shown that the ALJ engaged in an arbitrary substitution of her own lay opinion for competent medical evidence.

For these reasons, the Court finds substantial evidence supports the ALJ's RFC that Plaintiff is capable of a range of light work.

### 2. Plaintiff's Mental RFC

As noted above, the ALJ limited Plaintiff to "routine, simple tasks that do not require a fast past assembly quota pace." (T. 29.) Here, Plaintiff also argues the "ALJ had a duty to develop the record, because the report [of the consultative psychological examiner, Darlene Nalesnik, Ph.D.] was insufficient on its face to shed light on the extent of Plaintiff's functional limitations." (Dkt. No. 9 at 13.) For the same reasons discussed above, this Court disagrees and finds that the ALJ's assessment of Plaintiff's mental impairments is supported by substantial evidence.

In reaching the mental RFC determination, the ALJ assigned little weight to the opinion of psychological consultative examiner Dr. Nalesnik, who examined Plaintiff on July 22, 2013. (T. 35, 304-07.)  During the examination, Plaintiff was cooperative, and had no irritability or aggression during the interview.  (T. 304.)  Plaintiff described severe physical and emotional abuse by her mother throughout her childhood.  *Id*.  Plaintiff reported cutting her arms and legs with glass and wood for tension relief as a teenager.  *Id*.  She denied any current symptoms of post-traumatic stress disorder.  *Id*.  Plaintiff reported many years of mood instability with depression and anxiety.  (T. 305.)  Plaintiff reported being prescribed Celexa and Ambien in 2012.  *Id*.

On a scale of one to ten, Plaintiff rated her depression at an eight and her anxiety at a nine.  *Id*.  Plaintiff reported taking Aleve for pain, which she rated at a ten.  *Id*.[6]  Plaintiff also reported no physical limitations performing activities of daily living, such as bathing and grooming, but had some issues with stiffness/discomfort lifting her left arm, and with performing some household tasks due to her pain.  (T. 306.)

On examination, Plaintiff's affect "was blunted, with some range."  (T. 306.)  Her mood was moderately depressed with mild lability.  *Id*.  She was "moderately-highly anxious" about her medical issues and limited finances.  *Id*.  She had one episode of tearfulness.  (T. 305.)  She had no homicidal ideation, intention, or plan.  (T. 306.)  Plaintiff was orientated as to person, place, time, and date.  *Id*.  Her sensorium was clear.  *Id*.  Plaintiff's thought process was coherent, logical, and goal-directed.  *Id*.  She had no hallucinations.  *Id*.  She had good eye contact.  *Id*.  Plaintiff's attention and concentration was described as fair to good and her

---

[6]  Aleve (naproxen) is a nonsteroidal anti-inflammatory used to treat pain and inflammation. Naproxen, NATIONAL INSTITUTE OF HEALTH, U.S. NATIONAL LIBRARY OF MEDICINhttps://medlineplus.gov/druginfo/meds/a681029.html (last visited Sept. 25, 2017).

memory appeared intact.  *Id*.  She had no attentional difficulties during conversation.  *Id*.  She

had fair impulse control and limited judgment and insight.  *Id*.  Her reliability was noted as fair-

good.  (T. 306.)  Plaintiff was expressive and receptive language skills were good.  (T. 305.)  Her

speech was clear, fluent, and intelligible.  *Id*.  Her cognitive functioning was assessed as

borderline or low average, but no formal testing was conducted.  *Id*.  Dr. Nalesnik diagnosed

Plaintiff with bipolar disorder (provisional).  *Id*.  Her prognosis was fair.  (T. 307.)

In a medical source statement, Dr. Nalesnik indicated Plaintiff has no limitations related

to understanding and remembering simple instructions and with carrying out simple instructions.

(T. 308.)  Dr. Nalesnik opined Plaintiff has marked limitations with regard to understanding and

remembering complex instructions, moderate limitations carrying out complex instructions, and

mild limitations regarding the ability to make judgments on complex work-related decisions.  *Id*.

However, with regard to Plaintiff's ability to make judgments on simple work-related decisions,

Dr. Nalesnik checked two boxes: none and marked.  *Id*.[7]  Regarding Plaintiff's ability to interact

appropriately with others, Dr. Nalesnik indicated Plaintiff has mild limitations with regard to

interacting with the public and co-workers, as well as responding appropriately to usual work

situations and to changes in a routine work setting.  (T. 309.)  However, Dr. Nalesnik indicated

Plaintiff has both mild and moderate limitations in interacting with supervisors.  *Id*.  Because of

these "internal inconsistencies," the ALJ gave Dr. Nalesnik's opinion little weight.  (T. 35.)

Because there were no mental health treating source opinions in the record, the ALJ

evaluated Dr. Nalesnik's examination findings and medical opinion in the context of Plaintiff's

---

[7]  The Commissioner maintains that because Dr. Nalesnik identified only mild limitations in the
ability to make judgments on complex work-related decision, it is readily apparent that the
"marked" response on Plaintiff's ability to make simple work-related judgment was a clerical
error.  (Dkt. No. 10 at 13-14.)

treatment records and other medical sources. As noted above, on June 1, 2012, Plaintiff presented to Oswego Hospital Behavioral Services for assistance with her depression and anxiety after being diagnosed with plaque psoriasis. (T. 346-48.) *Id.* During her initial consultation, Plaintiff reported feeling very stressed and overwhelmed with feelings of depression, crying spells, trouble sleeping, and feeling "judged." (T. 346.) Plaintiff stated she had never received mental health treatment. *Id.* Plaintiff reported that she owned her mobile home, lived with her boyfriend, had strong support from her neighbor, and enjoyed crocheting, drawing, and writing children's stories. *Id.* Plaintiff expressed no interest in furthering her education or attending group therapy. (T. 347-48.)

During the consultation, Plaintiff appeared anxious and fidgety. (T. 347.) She denied any hallucinations or delusions as well as denied any suicidal, homicidal, or violent thoughts, and had no thoughts of self-harm. *Id.* She appeared oriented to time, place, and person. *Id.* Plaintiff did not appear to have any impairments in memory. *Id.* Plaintiff was assessed with adjustment disorder with mixed depression and anxiety, and was referred for a medication appointment. (T. 347-48.)

On June 8, 2012, Plaintiff treated with Dr. Patil at Oswego Hospital Behavioral Services. (T. 291.) She presented as very pleasant and cooperative, with neutral mood and appropriate affect. *Id.* Plaintiff reported feeling overwhelmed and depressed. *Id.* She was diagnosed with adjustment disorder with depressed mood and depressive disorder. (T. 292.) It was indicated that her lack of medical treatment was a problem causing her anxiety and depression. *Id.* Dr. Patil prescribed Celexa, Ambien, mometaseone fuoate, Desenex powder, and Visaril. *Id.* Plaintiff followed up with Dr. Patil on July 6, 2012, and reported better sleep with Ambien and

feeling less depressed.  (T. 290.)  She was continued on medication.  *Id*.  There are no further mental health treatment records.

In July 2013, State psychological consultant Grant Coyle, Ph.D., indicated that Plaintiff would be expected to understand and remember simple, one to two step instructions; is able to carry out very short and simple instructions; is capable of asking simple questions and accepting instruction; is able to maintain socially appropriate behavior; is able to make simple decisions; and is capable of performing simple routine work in a stable environment.  (T. 89.)  The ALJ afforded partial weight to Dr. Coyle's opinion.  (T. 34.)  Specifically, the ALJ found Dr. Coyle's opinion that Plaintiff had moderate limitations in activities of daily living to be inconsistent with the record as whole.  (T. 87.)  The ALJ found Dr. Coyle's remaining opinion to be supported by the record as a whole.  (T. 34.)

It is well-settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified in the field of social security disability.  *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 4.46.913(c), 416.927(e); *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010).  After carefully examining the entire record, the ALJ reasonably limited Plaintiff to "routine, simple tasks that do not require a fast past assembly quota pace."  (T. 29.)

For the same reasons discussed above, the Court finds Plaintiff's argument that the ALJ had a duty to develop the record and recontact Dr. Nalesnik due to the "internal inconsistencies" regarding Plaintiff's functional limitations to be without merit.  (Dkt. No. 9 at 13-14.)  At best, Plaintiff's argument can be construed as an evidentiary conflict.  But the presence of an evidentiary conflict does not categorically require the ALJ to seek further information.  Indeed, "it is the province of the ALJ to consider and resolve conflicts in the evidence as long as the

decision rests upon 'adequate findings supported by evidence having rational probative force.'" *Camarata v. Colvin*, No. 6:14-CV-0578, 2015 WL 4598811 (MAD/ATB), at \*9 (N.D.N.Y. July 29, 2015) (quoting *Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008)); *see also Richardson*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").

Here, the ALJ assessed the evidence in the record, identified inconsistencies between that evidence, and reconciled those inconsistencies based on what conclusion was supported by the evidence as a whole. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (noting that although an ALJ "cannot arbitrarily substitute his own judgment for competent medical opinion" or "set his own expertise against that of a physician who [submitted an opinion to or] testified before him," the ALJ is "free to resolve issues of credibility as to lay testimony or choose between properly submitted medical opinions") (quoting *McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)). The mere fact that the ALJ did not weigh the evidence the way Plaintiff would have liked is not grounds for remand where, as here, the ALJ's conclusions are reasonable and supported by substantial evidence. *Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that it is not the role of a court to "re-weigh evidence" because "a reviewing court defers to the Commissioner's resolution of conflicting evidence" where that resolution is supported by substantial evidence) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012)); *see also Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)). Indeed, the ALJ assessed the mental health opinion evidence and chose between those opinions, providing clear reasons for why she did or did not rely on specific opinions throughout her detailed written decision. (T. 22-38.) Plaintiff has not shown that the ALJ engaged in an arbitrary substitution of her own lay opinion for competent medical evidence.

For these reasons, the Court finds substantial evidence supports the ALJ's mental RFC limiting Plaintiff to "routine, simple tasks that do not require a fast past assembly quota pace." (T. 29.)

Based on the forgoing, the Court finds the ALJ's RFC determination is supported by substantial evidence, and remand is not required on this basis.

**B.      Whether the Step Five Determination is Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 10 at 15.)  To those reasons, the Court adds the following analysis.

It is well-established that elicitation of testimony from a vocational expert is a proper means of establishing the existence of jobs in sufficient numbers in the national and regional economy that the claimant is capable of performing.  *Bapp v. Bowen*, 802 F.2d 601, 604-05 (2d Cir. 1986); *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); *see also* 20 C.F.R. §§ 404.1566, 416.966.  "Use of hypothetical questions to develop the vocational expert's testimony is also permitted, provided that the questioning precisely and comprehensively includes each physical and mental impairment of the claimant accepted as true by the ALJ."  *Pardee*, 631 F. Supp. 2d at 222 (citation omitted).  As such, if the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability.  *Id*.

As discussed above, because there is substantial evidence to support that ALJ's RFC finding, which corresponds to the hypotheticals posed to the vocational expert (T. 67-70), the ALJ was entitled to rely on the vocational expert's testimony in finding that there is work in the

national economy that Plaintiff can do. Accordingly, the Court finds the ALJ's step five

determination is supported by substantial evidence, and remand is not required on this basis.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is

**GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is

**AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.


Dated: September 26, 2017
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge